# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2653
_____

John Edward Miller,

*Plaintiff - Appellant*,

v.

Kevin R. Dugan; Jerrod Wayne Scott; City of Barling,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: June 11, 2014
Filed: August 21, 2014

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

John Miller sued law enforcement officers Kevin Dugan and Jerrod Scott, as well as the City of Barling, Arkansas, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First and Fourth Amendments to the United States Constitution. He also brought several tort claims under Arkansas law. The district

court[1] entered judgment in Miller's favor in the amount of $40,000 after Miller accepted the defendants' offer of judgment under Federal Rule of Civil Procedure 68. The district court, after considering filings from the parties, also awarded him $35,875 in attorney's fees and $2,115.80 in costs.

Miller appeals the district court's denial of prejudgment interest on his state-law claims. He also disputes the district court's denial of an evidentiary hearing on his motion for attorney's fees and costs, and the court's ultimate award of attorney's fees. We affirm.

I.

Miller sued Dugan, Scott, and the City in July 2011. His amended complaint, filed in August 2012, alleged that the officers had violated his First and Fourth Amendment rights in an April 2010 encounter by conducting unlawful searches and seizures, using excessive force, and retaliating against him for his speech. He also brought claims of negligence, assault, battery, wrongful arrest, abuse of process, and malicious prosecution under Arkansas tort law based on the officers' conduct.

In November 2012, after the parties had begun discovery, the officers and the City tendered an offer of judgment under Federal Rule of Civil Procedure 68 in the amount of $40,000, plus reasonable attorney's fees and costs, to settle Miller's claims. Miller accepted and notified the district court of the agreement. He "request[ed] that a judgment . . . be entered showing liability of each of [the] three defendants to Plaintiff in the amount of $40,000 plus costs and attorney fees." The district court accordingly entered judgment for Miller and against the officers and the

---

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

City jointly in the amount of $40,000. Miller then moved for attorney's fees and expenses, as well as prejudgment interest.

The district court, after considering filings from the parties, granted Miller's motion in part and denied it in part. The court declined to award Miller prejudgment interest. The court awarded Miller $2,115.80 in costs pursuant to 28 U.S.C. § 1920 and $35,875 in attorney's fees. In calculating the fees, the court applied an hourly rate of $250 per hour, rather than the $300 per hour requested by Miller's attorney, Stephen J. Capron. The court also declined to award fees for the total number of hours that Miller claimed Capron had spent on the case.

## II.

### A.

Miller first argues that prejudgment interest should have been awarded, at least as to his state-law tort claims. Arkansas law, he posits, provides for prejudgment interest where the amount of damages is certain or amenable to precise calculation. *See Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 938 S.W.2d 565, 568 (Ark. 1997). State law, however, does not control whether prejudgment interest should accompany a judgment entered pursuant to a settlement under Federal Rule of Civil Procedure 68. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 527 (10th Cir. 1992).

Rule 68 allows a defendant in a civil action to "offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). The offeror, if his offer is accepted, is thus responsible for paying the "judgment," as well as the opposing party's "costs," which include attorney's fees under 42 U.S.C. § 1988. *See Marek v. Chesny*, 473 U.S. 1, 7-9 (1985). Consistent with the rule, the officers and the City offered Miller "the sum of Forty Thousand Dollars ($40,000.00), plus reasonable attorneys' fees and costs, to be determined by agreement of the parties or

-3-

by the Court, in full and complete settlement of this claim and cause of action." Miller accepted the offer, but in his notice of acceptance he claimed to be "reserving [his] right to move for an award of costs, fees and interest as the prevailing party to this action." Miller then forwarded the agreement to the district court and "request[ed] that a judgment . . . be entered showing liability of each of [the] three defendants to Plaintiff in the amount of $40,000 plus costs and attorney fees."

Any prejudgment interest to which Miller may have been entitled on his state tort claims was encompassed in the $40,000 judgment entered by the district court. "Prejudgment interest is not a 'cost' in th[e] narrow sense" that Rule 68 uses the term. *United States v. Am. Commercial Barge Line Co.*, 988 F.2d 860, 864 (8th Cir. 1993). Rather, "[i]t is part of the damages suffered by the plaintiff." *Id.* The offer in this case promised a $40,000 judgment, plus reasonable attorney's fees and costs; it made no provision for a separate award of prejudgment interest. As the Tenth Circuit said in *Mock*, "a Rule 68 consent judgment for a sum certain must, absent indication otherwise, be deemed to include pre-judgment interest. To hold otherwise would undermine the purpose of Rule 68." 971 F.2d at 527 (footnote omitted). Although Miller purported to "reserv[e]" the right to move for interest in his acceptance of the offer, the district court correctly concluded that he was entitled to none.

B.

Miller next argues that the district court contravened Federal Rule of Civil Procedure 54 when it ruled on his motion for attorney's fees without convening an evidentiary hearing. Rule 54 provides in relevant part: "[T]he court must, on a party's request, give an opportunity for adversary submissions on the motion [for attorney's fees] in accordance with Rule 43(c) or 78." Fed. R. Civ. P. 54(d)(2)(C). The rule does not require an evidentiary hearing. To the contrary, it references Federal Rule of Civil Procedure 78, which states that "[b]y rule or order, the court may provide for submitting and determining motions on briefs, without oral

hearings." Fed R. Civ. P. 78(b). As the advisory committee notes explain, Rule 54(d)(2)(C) "assures the parties of an opportunity to make an appropriate presentation with respect to issues involving the evaluation of legal services. *In some cases, an evidentiary hearing may be needed, but this is not required in every case.*" Fed. R. Civ. P. 54 advisory committee's note (discussing 1993 amendments) (emphasis added). The district court, in compliance with Rule 54(d)(2)(C), considered not only Miller's motion and the defendants' response, but also a reply and sur-reply filed without leave of court. Nothing more was required by Rule 54.

C.

Miller contends that the district court's award of $35,875 in attorney's fees was unreasonable. We review the district court's award of attorney's fees for abuse of discretion. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), although a district court has discretion to adjust the fee to account for other considerations, such as the nature of the results obtained. *Id.* at 434. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* at 437.

1.

Miller challenges the district court's decision that $250 per hour, not the requested $300 per hour, was a reasonable hourly rate. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825. Based on its

experience, the court identified the prevailing market rate in the community as $250 per hour.

Miller argues that the district court abused its discretion by relying on the prevailing market rate for civil rights litigation in the area of Fort Smith, Arkansas, because it should have applied Capron's standard rate in Tulsa, Oklahoma, of $300 per hour. Miller cites *Casey v. City of Cabool, Missouri*, 12 F.3d 799 (8th Cir. 1993), in which this court reasoned that "the opportunity cost of the lawyer's time provides the starting point for determining a presumptively correct hourly rate," but continued that "[o]ther considerations, including the complexity of the litigation and the relevant market for legal services from which the plaintiff had to choose are also of relevance." *Id.* at 805. *Casey* does not preclude a district court from considering the prevailing rate in the local community. More recently, this court discussed *Casey* while applying the rule that "a reasonable hourly rate generally means the ordinary fee for similar work in the community." *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 997 (8th Cir. 2012) (per curiam) (internal quotation omitted).

Miller contends that the district court should have looked to a broader community than Fort Smith when determining the prevailing rate for similar litigation. It is true that we have considered the prevailing rate in the market from which attorneys have traveled where the attorneys were "leaders in the field" with "extensive experience," "able to handle the case in a shorter length of time than a local lawyer, without comparable experience, would have needed." *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 2005). But this flexibility does not mean that a district court is forbidden in the ordinary case to focus on the community in which the case was litigated.

Implicit in the district court's reasoning here is the view that a local lawyer, adequately versed in civil rights litigation, would have sufficed to attain the result that Miller received while charging the ordinary Arkansas rate. In other words, Miller's

attorney "did not display the excellence, or achieve the time savings, implied by [his] higher rate[]." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993). Miller did inform the court that he had faced difficulty finding a local attorney to take his case, but the district court—presumed to be "intimately familiar with its local bar," *Emery*, 272 F.3d at 1048 (internal quotation omitted)—reasonably could have determined that qualified counsel was available in the area to handle this relatively straightforward case. We therefore see no abuse of discretion.

2.

Miller also argues that the district court abused its discretion in declining to award him attorney's fees for several blocks of time billed by attorney Capron. "'[H]ours that are excessive, redundant, or otherwise unnecessary' must be excluded" from the district court's determination of reasonable time expended on the case. *El-Tabech v. Clarke*, 616 F.3d 834, 842 (8th Cir. 2010) (quoting *Hensley*, 461 U.S. at 434).

Miller challenges the district court's rejection of Capron's time spent relating to a separate civil case in which Miller testified as a non-party witness. Miller argues that because that case involved allegations against Dugan and the City that were similar to his, the time invested was analogous to time spent in a hearing or deposition for his own case. The district court acknowledged that fees could be awarded for time devoted to separate litigation, if the effort resulted in work product that was actually used in the instant case, the time spent was inextricably linked to issues raised in the instant case, and the plaintiff was not otherwise compensated for counsel's work in the ancillary proceeding. R. Doc. 45, at 9 (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993)). But the court found that Miller presented no evidence that his testimony in the separate case, or Capron's work in preparation for that case, was actually used in Miller's lawsuit. Miller has not shown that the court's finding was clearly erroneous, and we

see no abuse of discretion in the court's conclusion that the time was not reasonably expended on this case.

The district court also rejected as unreasonable Miller's claim for 3.5 hours spent on an "ill-advised and unnecessary" motion to compel attendance at depositions. When it first denied the motion to compel, the court explained that the motion failed because the parties had not yet agreed when to hold the defendants' depositions. Miller contends that the district court should not discount time spent on any motion, even one that is ill-advised, because he ultimately prevailed in obtaining a favorable judgment. Miller's categorical position, however, is inconsistent with the Supreme Court's admonition that "excessive, redundant, or otherwise unnecessary" time should be excluded from an award of attorney's fees. *Hensley*, 461 U.S. at 434.

Miller next contests the district court's award of attorney's fees for only one half the time Capron spent responding to two motions to compel discovery responses filed by the officers and the City. The court allowed compensation for 5.15 hours; Miller seeks payment for 10.3 hours. The court concluded that the full amount of time was not reasonably expended, in part because both motions were resolved largely in favor of the defendants. We see no abuse of discretion. The district court has a "superior understanding of the litigation," *id.* at 437, and Miller has shown no error in the court's reasoning that the time spent was excessive in light of the unfavorable result.

Miller challenges the district court's rejection of 8.7 hours that Capron spent on discovery issues. The district court awarded Miller attorney's fees for 2.9 out of 5.8 hours requested for drafting discovery responses, and rejected altogether another 5.8 hours Capron spent "on the same discovery issues" prior to a hearing on one of the defendants' motions to compel. The district court reasonably declined to compensate all of the 5.8 hours spent drafting discovery responses, given that the court was required to order Miller to supplement his responses and that Miller had to

-8-

correct erroneous information he originally provided the defendants. As for the 5.8 hours the district court denied entirely, Miller has given us no reason to doubt the court's conclusion that the additional time spent "on the same discovery issues" was "excessive under the circumstances."

Finally, Miller argues that the district court abused its discretion in rejecting 4.3 hours spent on research for his motion for fees and in awarding fees for only half of the 5.1 hours requested for drafting the motion and preparing a reply to the defendants' opposition. The district court noted that Capron's normal hourly rate—proffered as reasonable in part due to his "great deal of experience working on Civil Rights Act cases"—was inconsistent with the number of hours spent researching and preparing the motion and the reply. Miller cites the infrequency with which cases of this type require motions for fees (because, he says, parties typically settle), but we find this argument unavailing in the face of the district court's familiarity with this case and with civil rights litigation more generally.

\*     \*     \*

The judgment of the district court is affirmed.

_____