# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-1362
_____

Amy Elizabeth Krekelberg

*Plaintiff - Appellee*

v.

City of Minneapolis; Heather Young; Matthew Olson

*Defendants - Appellants*

Minneapolis Park & Recreation Board; John & Jane Does; Entity Does; Keith Rowland; John Wurm; Mark Gasior

*Defendant*s
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 16, 2020
Filed: March 19, 2021
_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Officer Amy Krekelberg of the Minneapolis Police Department ("MPD") sued more than forty local government entities and employees for, among other

things, violating the Driver's Protection Privacy Act ("DPPA"), 18 U.S.C. § 2721 *et seq*. By the time of trial, only three Defendants remained: the City of Minneapolis ("City") and MPD Officers Heather Young and Matthew Olson. The remaining claims involved 74 alleged DPPA violations based on 74 impermissible accesses of Krekelberg's driver's license data by 58 MPD police officers. The jury returned a verdict for Krekelberg, awarding both compensatory and punitive damages. Defendants appeal, claiming that based on certain evidentiary and jury-instruction errors, they should receive a new trial. The City claims that as a matter of law, it cannot be liable for 72 of the 74 DPPA violations for which it was held vicariously liable. Defendants also challenge the jury's punitive-damages award. For the reasons discussed below, we affirm in part, reverse in part, vacate the judgment, and remand for a new trial.

## I.

Krekelberg began working for the Minneapolis Park Police Department in 2006. In 2012, she transferred to the MPD. In 2013, she received a letter indicating that her driver's license data had been accessed. She then contacted Minnesota Driver and Vehicle Services ("DVS") and requested a report showing accesses of her data. DVS sent her an audit showing approximately one thousand accesses by more than forty different law-enforcement agencies between 2003 and 2012.

Later that year, Krekelberg filed suit against more than forty local governments and government agencies, including the City, as well as one thousand "Doe" defendants. The complaint alleged various causes of action, including DPPA claims.[1] During discovery, Krekelberg used a subpoena to determine the names of

---

[1]To prove a violation of the DPPA, Krekelberg was required to demonstrate that a defendant "knowingly obtain[ed], disclose[d], or use[d] personal information, from a motor vehicle record, for a purpose not permitted" by law. *See* 18 U.S.C. § 2724(a). The statute permits recovery of "actual damages . . . not less than liquidated damages in the amount of $2,500" and "punitive damages upon proof of willful or reckless disregard of the law." *Id*. § 2724(b)(1)-(2).

the officers who accessed her DVS data. Once she obtained that information, she amended her complaint to add officers who had allegedly improperly accessed her DVS data. Because the amendment occurred nearly a year and a half after Krekelberg initially brought suit and the district court held that the amended complaint did not relate back, many of the newly named officers successfully moved to dismiss the claims against them as barred by the statute of limitations. The City then moved for judgment on the pleadings for all vicarious-liability claims against it that were based on the now-dismissed claims against MPD officers, though it did not argue that it had been sued untimely for those claims. The court denied the City's motion.

By the time of trial, all defendants other than the City and MPD Officers Olson and Young had been dismissed from the suit or had settled with Krekelberg. Krekelberg's only remaining claims against the City were DPPA claims based on vicarious liability for 58 MPD police officers who had accessed her data 74 times between December 2009 and 2012. Her only remaining claims against Officers Olson and Young were for one DPPA violation each. At trial, Krekelberg presented evidence that her DVS data had been accessed improperly more than one thousand times between 2003 and 2012. The court also admitted evidence that the City failed to investigate Krekelberg's claims, that Krekelberg experienced harassment and discrimination as a consequence of filing the lawsuit, and that the City failed to hold the offending officers accountable, all of which Krekelberg claimed caused her emotional distress.

In addition, the district court instructed the jury that "before the trial began, [it] made a legal ruling that the City of Minneapolis is responsible for any damages that [the jury] may assess to Olson or . . . Young . . . ." The jury returned a verdict against the City for $285,000 in compensatory damages based on 74 accesses by 58 MPD officers. It also assessed punitive damages against Officers Olson and Young in the amount of $150,000 each based on their single accesses. After trial, Defendants moved for a new trial based on evidentiary and jury instruction errors. The City also moved for judgment as a matter of law under Rule 50 on all vicarious-

liability claims where the corresponding individual-liability claim had been dismissed based on the statute of limitations. The district court denied these motions.

On appeal, Defendants claim that the district court made a number of errors. First, the City claims the district court erred by failing to dismiss the 72 vicarious-liability claims against it that corresponded to individual-officer claims dismissed as time-barred based on the statute of limitations. Second, Defendants argue that they should receive a new trial because the district court erred by: (1) admitting evidence of 850 accesses of Krekelberg's DVS data by persons and entities whose conduct was no longer at issue in the suit; (2) admitting evidence of alleged harassment and discrimination against Krekelberg resulting from the lawsuit and of the City's failure to investigate her claims; (3) instructing the jury that the City would be indemnifying Officers Olson and Young; and (4) instructing the jury that violations of law-enforcement policy and state law were *per se* violations of the DPPA. Finally, Defendants argue that we should remit the punitive-damages award because it violates their right to due process.

## II.

First, we address the City's argument that the district court should have granted its Rule 50 motion for judgment as a matter of law as to the 72 vicarious-liability claims against the City that corresponded to individual-officer claims previously dismissed as time-barred.

Under Rule 50, the district court may grant a motion for judgment as a matter of law if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *Am. Bank of St. Paul v. T.D. Bank, N.A.*, 713 F.3d 455, 461-62 (8th Cir. 2013). We review *de novo* a denial of a Rule 50 motion, viewing the evidence in the light most favorable to the party who prevailed before the jury. *Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 769 (8th

Cir. 2004). We "will reverse only if there is a complete absence of probative facts to support the verdict." *Am. Bank*, 713 F.3d at 462 (internal quotation marks omitted).

The question here is a legal one: When a suit is dismissed as time-barred against an agent, must the suit against the principal, based solely on vicarious liability, also be dismissed when it is undisputed that the claims against the principal were timely? "[W]hen Congress creates a tort action," such as the DPPA, "it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Orduno v. Pietrzak*, 932 F.3d 710, 718 (8th Cir. 2019). As we have explained, because the DPPA became law in 1994, the legal background against which Congress legislated includes the Restatement (Second) of Agency because it had been published at that time. *Id.* Relevant here, the Restatement (Second) of Agency provides that a principal may be liable for the torts of his agent. *See* Restatement (Second) of Agency § 219 (Am. L. Inst. 1958). Additionally, "[p]rincipal and agent can be joined in an action for a wrong resulting from the tortious conduct of an agent or that of agent and principal, and a judgment can be rendered against each." *Id.* § 217B(1). But when "the action is based solely upon the tortious conduct of the agent, judgments on the merits for the agent and against the principal . . . are erroneous." *Id.* § 217B(2).

The City argues that, by dismissing the claims against certain officers as untimely while allowing a jury verdict against the City on related vicarious-liability claims to stand, the district court violated the rule articulated in section 217B(2). Everyone agrees that the principal (the City) and the agents (the individual police officers) were joined in an action "based solely upon the tortious conduct of the agent[s]" and that the jury returned a verdict against the City. *See id.* The question, then, is whether the district court's dismissals of the DPPA claims against the individual police officers were "judgments on the merits for the agent[s]."

Pointing to Federal Rule of Civil Procedure 41(b), the City argues that a dismissal based on the statute of limitations is "on the merits." Rule 41(b), which governs involuntary dismissals, states that "[u]nless the dismissal order states otherwise, a dismissal under [Rule 41(b)] and any dismissal not under this rule— except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." The City claims that this dismissal constitutes an adjudication "on the merits" because it is not one of the three listed exceptions in Rule 41(b).

The City's proposed interpretation of "judgment on the merits" in section 217B(2) is erroneous. Section "217B's 'on the merits' language was not intended to encompass procedural dismissals that do not adjudicate the wrongfulness of the agent's conduct. Instead and in context, . . . [it] means judgment on the merits *of the conduct*, that is, a judgment finding that the employee is not culpable." *Verrastro v. Bayhospitalists, LLC*, 208 A.3d 720, 728 (Del. 2019).[2] This view is bolstered by comment (e) to section 217B(2), which suggests that the rule is about when "the jury improperly returns a verdict for the agent and against the principal." It is also in accord with *Black's Law Dictionary* (11th ed. 2019), which defines "judgment on the merits" as "[a] judgment based on the evidence rather than on technical or procedural grounds."

With respect to the City's Rule 41(b) argument, the Supreme Court explained in *Semtek International Inc. v. Lockheed Martin Corp.* that the phrase "adjudication on the merits" in Rule 41(b) means "with prejudice" and should not be equated with a "prototypical judgment on the merits"—"one in which the merits of a party's claim are in fact adjudicated for or against the party after trial of the substantive issues." 531 U.S. 497, 502, 505-06, 509 (2001).[3] Thus, the dismissals of the 72 underlying

---

[2]Although *Verrastro* itself obviously postdates the DPPA, it interprets section 217B(2), which forms the backdrop to this question.

[3]The City cites to *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), for the proposition that a dismissal based on the statute of limitations is "on the merits."

claims against the officers were not "judgments on the merits" under the meaning of section 217B(2), and that section does not prohibit the City from being held vicariously liable for them.

The City also argues for dismissal of the 72 vicarious-liability claims on the basis of "ordinary tort-related vicarious liability rules." In support, the City primarily relies on two state-court decisions issued before 1994: *Greco v. University of Delaware*, 619 A.2d 900, 904 (Del. 1993), *overruled by Verrastro*, 208 A.3d 720, and *Karaduman v. Newsday, Inc.*, 416 N.E.2d 557, 564 (N.Y. 1980). But both *Greco* and *Karaduman* are inapposite for the same reason: neither poses the scenario in which a principal is timely sued while an agent is not. *See Greco*, 619 A.2d at 901-02, 904; *Karaduman*, 416 N.E.2d at 558-59, 563. In both cases, the principal was not sued until after the agent's statute of limitations had run. *See Greco*, 619 A.2d at 901-02, 904; *Karaduman*, 416 N.E.2d at 558-59, 563.

Ultimately, the City has not proffered a sound argument for why we should dismiss the 72 timely filed vicarious-liability claims. Certainly, a principal may be sued for his agent's conduct even if the agent is not sued as well. *See, e.g., Brosamle v. Mapco Gas Prods., Inc.*, 427 N.W.2d 473, 475 (Iowa 1988) ("[T]he servant is not a necessary party to an action against the master." (internal brackets omitted)); *Rieser v. District of Columbia*, 563 F.2d 462, 469 n.39 (D.C. Cir. 1977) (same). Therefore, we affirm the district court's denial of the City's Rule 50(b) motion for judgment as a matter of law with respect to the 72 vicarious-liability claims against it.

---

*Plaut* states: "The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." *Id*. at 228. But *Plaut* did not address questions of vicarious liability. *Id*. Nor did it explain what the term "judgment[] on the merits" means in the Restatement (Second) of Agency. *Id*. As *Semtek* notes, the phrase has multiple meanings. 531 U.S. at 501-02, 505-06.

## III.

Defendants argue that they are entitled to a new trial because the district court: (A) admitted evidence of 850 accesses that were not committed by the 58 MPD officers whose alleged DPPA violations were at issue; (B) admitted evidence of harassment, retaliation, and failure to investigate by the City; (C) instructed the jury that the City would indemnify Officers Young and Olson; and (D) instructed the jury that violations of law-enforcement policy and state law were *per se* violations of the DPPA. We conclude that Defendants are entitled to a new trial on the basis of (A), (B), and (C).

## A.

Defendants argue that the district court violated Federal Rule of Evidence 403 by admitting evidence of 850 accesses that were not committed by the 58 officers whose conduct was at issue at trial.[4] "We review the district court's evidentiary rulings for abuse of discretion, and we may not reverse unless the district court erred and the error affected the substantial rights of the appellant." *Green v. City of St. Louis*, 507 F.3d 662, 669 (8th Cir. 2007).

Rule 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury," among other things. "A trial judge can and should exclude evidence when convinced that it will create a danger of prejudice outweighing its probative value." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981). "However, rule 403 . . . does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case." *Id.* "The rule

---

[4]Defendants initially argued that the district court should have excluded evidence of another 50 time-barred accesses that were committed by the 58 officers whose conduct was at issue in the suit. We need not reach whether the district court abused its discretion in admitting this evidence because we conclude a new trial is required on other bases.

protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Id*. The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one."

The district court admitted evidence of 850 time-barred or dismissed access claims that were not performed by the 58 police officers whose 74 accesses were at issue. These additional accesses were performed either by other MPD officers or by persons in different departments or law-enforcement agencies. Krekelberg argues that the district court properly admitted these 850 accesses because they were relevant to the emotional distress she suffered. We hold that under Rule 403 it was an abuse of discretion to admit this evidence because the risk of unfair prejudice substantially outweighed its probative value, which was minimal.

At most, the 850 accesses were minimally probative of the emotional distress Krekelberg experienced from the 74 accesses actually at issue in the case. About 500 of the 850 accesses were by persons who were not part of the MPD and whose accesses were time-barred or who had settled. The other 350 time-barred or settled claims related to accesses by officers in the MPD whose conduct was not at issue in the suit. None of these 850 accesses should have been considered in the jury's damages calculation, which should have been based solely on the 74 non-time-barred, unsettled access claims. *See Orduno*, 932 F.3d at 719 (acknowledging that the defendant could not be liable for time-barred violations of the DPPA). Only the emotional damage caused by these 74 improper accesses was at issue.[5] To allow Krekelberg to recover emotional damages based on all 850 would be to allow her to recover damages based on settled or dismissed claims.

---

[5]18 U.S.C. § 2724(b) does not expressly provide for emotional distress damages. However, no party challenges the award of emotional distress damages on appeal. Therefore, we assume, without deciding, that emotional distress damages are a permissible remedy for a violation of the DPPA.

On the other hand, this evidence was extraordinarily prejudicial and risked confusing the jury because it took the focus off the 74 accesses from December 2009 to 2012 at issue in the suit and onto the 850 time-barred accesses from 2003 to December 2009, which could not be considered as damages. Krekelberg testified that about half of the one thousand accesses "c[a]me from Minneapolis" and that they were conducted by more than two hundred MPD officers, which tended to portray the City as a bad actor. Krekelberg testified that learning about all these accesses, especially those performed by her coworkers at MPD, caused her emotional distress. Admitting into evidence such a large number of accesses by persons whose conduct was not at issue in the suit, many of whom worked for the City, is "inflammatory," *see Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1075 (5th Cir. 1986), and likely to "divert the jury's attention from the real dispute in the case"—namely, the 74 accesses. *See Wheeling v. Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 717 (8th Cir. 2001). Therefore, it was an abuse of discretion to admit this evidence, as it would have tended to increase the amount of damages on an impermissible basis.[6] *See Orduno*, 932 F.3d at 719 ("Allowing evidence of other obtainments [of information that violated the DPPA] risked encouraging the jury to award damages based on time-barred incidents for which [the defendant] could not be liable" because "the jury's task was to determine damages flowing from the . . . unlawful obtainments.").

Krekelberg argues that the admission was harmless because the district court gave a limiting instruction. However, a limiting instruction is not a cure for any and all Rule 403 errors. *See United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir. 1991) (holding that a limiting instruction may remedy one statement but cannot cure the entire theme of a trial); Rule 403 Advisory Committee Notes ("In reaching a decision

---

[6]In fact, it is likely to have done so. As discussed below in Section III.C, the district court instructed the jurors that the City would be liable for punitive damages assessed against Officers Young and Olson. The fact that the jury assessed $150,000 in punitive damages against each of Officers Olson and Young, based only on one access each, suggests that the jury was attempting to assess punitive damages against the City on the basis of the City's alleged "bad acts."

whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."); 21A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5066 (2d ed.) ("If the [limiting] instructions [would be] . . . ineffective . . . , then the trial judge should exclude the evidence under Rule 403."). Here, Krekelberg made the evidence a theme of her case by introducing it multiple times in different ways and by repeatedly referencing the one thousand improper accesses during opening and closing argument. *See Roark*, 924 F.2d at 1434. Thus, the limiting instruction did not overcome any unfair prejudice.

B.

Defendants also argue that the district court violated Rule 403 by admitting evidence of harassment, retaliation, and failure to investigate by the City after Krekelberg notified her superiors of the violations. Defendants claim that this was an abuse of discretion because there was no evidence that any of the 58 officers involved in the improper accesses at issue committed these bad acts and that the City could not be vicariously liable for any conduct except for the conduct of the 58 officers. Krekelberg argues that this evidence was rightly admitted as evidence of reasonably foreseeable damages.

Krekelberg's argument is unavailing. In *Orduno*, the plaintiff challenged a district court's exclusion of the city's response to its employee's violations of the DPPA. 932 F.3d at 719. On appeal, we affirmed the district court's exclusion of evidence because "no question of the City's direct liability was before the jury," and, therefore, "the court did not abuse its discretion in focusing the trial on the harm that [the defendant's] . . . violations caused [the plaintiff]." *Id.* In doing so, we implied that a defendant's response to a plaintiff's allegations of DPPA violations cannot cause damages when the defendant is only vicariously liable. Krekelberg points to no evidence that the alleged harassment, retaliation, and failure to investigate were caused by the persons who accessed her data. *See, e.g.*, *Menghi v. Hart*, 745 F. Supp. 2d 89, 107 (E.D.N.Y. 2010) (awarding emotional distress damages for threats and

-11-

harassing phone calls from the person who unlawfully accessed the plaintiff's information). Thus, this evidence was not probative of any of her damages.

This evidence was also unfairly prejudicial. The retaliation, harassment, and failure-to-investigate evidence translated into a major and irrelevant trial theme: the City is a bad actor. Approximately a third of Krekelberg's opening and closing statements were devoted to this irrelevant theme. During the trial, Krekelberg testified that "since trying to hold people accountable," she had been "excluded from things" and had not been "backed up on calls," causing "some sleepless nights, some depression." Unknown persons took her nametag off her work mailbox so that it fell on the floor and was trampled numerous times. She lost part-time work because an officer said she "was trouble." Someone filed an internal-affairs complaint against her, and no one at MPD ever asked her about her side of the story. On two separate occasions after filing suit, cars were parked in front of her house, which caused her constantly to fear that something was going to happen to her children or her. Krekelberg also testified that the City failed to hold accountable the officers who performed impermissible accesses, promoting rather than punishing them. And Krekelberg introduced evidence that the City failed to investigate the accesses thoroughly and fairly, which her attorneys portrayed as a "coverup."

We have previously noted in the Rule 403 context that while "[o]ne statement" may be "damaging but isolated," "the jury [cannot] disregard the entire theme of the trial," even if there is a limiting instruction. *Roark*, 924 F.2d at 1434. And with respect to this evidence, there was no limiting instruction. Failing to exclude the bad-acts testimony was an abuse of discretion under Rule 403, as it was minimally if at all probative to the issues at trial and essentially put the City on trial for harassment, discrimination, and failure to respond, when the 74 accesses were the only relevant source of City liability.

C.

Finally, the City contends that the district court erroneously instructed the jury that the City was liable for all damages, including punitive damages, assessed against Officers Olson and Young. This court reviews jury instructions for abuse of discretion.[7] *Am. Bank*, 713 F.3d at 467. "A district court possesses broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity." *Id.* "We limit our review to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Id.* at 467-68 (internal quotation marks omitted). "Even if we find that a district court erroneously instructed the jury, we will reverse only where the error affects the substantial rights of the parties." *Id.* at 468 (internal brackets omitted).

The district court provided the following instruction to the jury: "Before the trial began, I made a legal ruling that the City of Minneapolis is responsible for any damages that you may assess to Olson or to Young or to the additional accesses at issue in this case." Krekelberg claims that this statement is solely about the City's vicarious liability for accesses. However, Defendants claim that it is misleading and prejudicial because the Court already held that the City could not be vicariously liable for punitive damages. Defendants are correct that the district court had previously ruled that the City was not vicariously liable for punitive damages. Krekelberg does not dispute this ruling on appeal.

---

[7]Krekelberg claims that Defendants forfeited this objection by failing to object earlier, when the court asked the jurors during *voir dire* whether "anyone on this potential jury panel . . . would have a problem awarding damages against the City of Minneapolis for the conduct of a police officer." Krekelberg is incorrect. The question by the court in *voir dire* did not carry the same implications as the jury instruction. The *voir dire* question referenced vicarious liability generally. On the other hand, as discussed below, the jury instruction implied that the City would be responsible for punitive damages assessed against Officers Olson or Young.

The jury instruction implied that the City would be responsible for punitive damages assessed against Officers Olson or Young. The court stated that the City would be responsible for "any damages" assessed to Officers Olson or Young. It did not distinguish between punitive damages and compensatory damages. Moreover, the verdict form indicated only two places where it expressly stated that damages could be assessed to Officers Olson and Young, and both assessed only punitive damages. Thus, the court's jury instruction effectively informed the jury that the City was responsible for punitive damages assessed against Officers Olson and Young.

We have previously reversed a jury's verdict on the basis that the jurors were informed about the indemnification status of the defendant. *See Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986). "The reasoning behind this . . . is that it will result in an unduly generous award of damages by the jury." *Id*. Indeed, the same reasoning is well illustrated by what happened here, where the jury awarded $150,000 in punitive damages against each officer for a single access. Accordingly, we conclude that it was an abuse of discretion to instruct the jury in this manner.

D.

We conclude that the cumulative effect of the faulty jury instruction and the evidentiary errors affected Defendants' "substantial rights." *Am. Bank*, 713 F.3d at 464, 468. Whether an error affects "substantial rights" is determined by whether there is harmless error, which turns on whether the "error affected the judgment." *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009); *see also Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1127-28 (8th Cir. 2000) ("Where the district court errs in admitting evidence, we will only grant a new trial or set aside a verdict if there is a clear and prejudicial abuse of discretion . . . [which] occurs when the error prejudicially influences the outcome of the case." (internal brackets and quotation marks omitted)). "[T]he burden" for making this "showing . . . rests on the party asserting it." *Qualley*, 212 F.3d at 1128. To determine whether the errors

prejudicially influenced the outcome of the case, we look to the jury's verdict. *Id.* at 1131.

Here, the punitive-damages portion of the jury's verdict is incongruous with the facts on which it is premised. The jury awarded $150,000 in punitive damages against Officer Olson, and another $150,000 against Officer Young, for only a single access each. These findings are so excessive that "the jury had to [have] look[ed] beyond the" two accesses at issue to extraneous things. *See id.* Here, it is evident that this award was based on the abundance of highly prejudicial, minimally relevant evidence about 850 accesses not at issue in the case (more than half of which were performed by persons who were not MPD officers), the City's and its employees' alleged bad acts, and the erroneous jury instruction that the City would be liable for Officers Olson and Young's punitive damages.

Considering that these evidentiary errors and jury instructions influenced the verdict, we vacate the judgment and remand for a new trial.[8]

## IV.

For the foregoing reasons, we affirm the district court's order declining to dismiss the vicarious-liability claims against the City, but we vacate the judgment, reverse, and remand for a new trial due to the erroneous admission of evidence and faulty jury instruction that affected Defendants' substantial rights.

_____

[8]We need not reach whether the punitive-damages award should be remitted, as it will be vacated. Likewise, we need not reach whether the district court erred in instructing the jury that violations of law-enforcement policy and state law are *per se* violations of the DPPA, as we deem the necessity for a new trial sufficient on other bases.