IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 3, 2023

## JASON BRITT v. RICHARD JASON USERY ET AL.

**Appeal from the Circuit Court for Henderson County**
No. 17112-2  Judge Donald H. Allen

_____

### No. W2022-00256-COA-R3-CV
_____

The Plaintiff hired the Defendant to build a concrete foundation for his new home.  The foundation was allegedly defective.  The Plaintiff hired a third party to remove the concrete and to properly complete the work.  The Plaintiff then sued the Defendant, alleging breach of contract, negligent construction, and fraud.  The case languished for several years.  The trial court ordered the Plaintiff to provide dates on which the Defendant could inspect certain evidence, but the Plaintiff failed to comply.  The trial court then orally granted the Defendant's motion to dismiss with prejudice for failure to prosecute.  Before the trial court entered a written order, the Plaintiff filed a notice of voluntary dismissal.  The trial court concluded that the Plaintiff's notice was untimely submitted, coming after the oral ruling granting the motion to dismiss, and entered a written order dismissing the Plaintiff's case with prejudice for failure to prosecute.  Concluding that the Plaintiff maintained his right to a voluntary dismissal under Tennessee Rule of Civil Procedure 41.01(1), we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

Adam P. Nelson, Union City, Tennessee, for the appellant, Jason Britt.

Tamara Hill, Jackson, Tennessee, for the appellees, Richard Jason Usery and Jason Usery Construction, LLC.

**OPINION**

I.

In March 2014, Jason Britt hired Richard Jason Usery of Jason Usery Construction, LLC., to serve as the general contractor on the construction of a new home in Lexington,

Tennessee. Mr. Usery began construction of the concrete foundation, footer, and safe room. These concrete sections were to be built with steel rebar. Mr. Britt inquired to confirm that Mr. Usery was using rebar. Mr. Usery confirmed that he used rebar to reinforce the foundation, footer, and safe room, and he sent an invoice for this work to Mr. Britt, which was eventually paid. Mr. Britt claims he inspected the work in August 2017 and determined that no rebar was actually used, making the work with the foundation, footer, and safe room defective. In response, Mr. Britt hired a third party to remove the concrete, re-grade the land, and build a new foundation, footer, and safe room. This generated additional costs for Mr. Britt, who had the concrete removed to an unimproved parcel of land belonging to one of his neighbors.

Three years later, in August 2017, Mr. Britt filed a complaint alleging breach of contract, negligent construction, and fraud. Mr. Usery answered, denying that he failed to use rebar, and filed a motion to dismiss based primarily on a theory of spoliation. Mr. Usery alleged that Mr. Britt had destroyed the primary evidence in the case—the concrete—and moved it off-site. Mr. Britt responded, arguing that Mr. Usery was present when the concrete was excavated and that the concrete was not destroyed. Rather, he asserted that the concrete was simply moved to allow for the construction of his home and that Mr. Usery could still inspect the concrete through the discovery process. The trial court denied the motion to dismiss, but it did order Mr. Britt to allow Mr. Usery to view and inspect the concrete. Mr. Usery then sent discovery requests, including an interrogatory asking for the location of the discarded construction materials. Mr. Britt responded that the concrete was located on property "owned by Justin Roach on Joy Lane, Henderson County, TN." No specific address or location on the property itself was provided.

In March 2018, Mr. Usery's counsel emailed Mr. Britt's counsel asking to set a time to inspect the concrete. After receiving no response, Mr. Usery sent a follow-up email a couple of weeks later. Over the next few months, in a myriad of back-and-forth emails related to other discovery issues, the inspection was referenced a few times but never appeared to be a top priority for either party. In July, Mr. Usery sent another follow-up email asking about inspection dates. Mr. Britt responded that same day with three proposed dates for inspection. This time Mr. Usery did not respond but instead sent a follow-up in November stating that they still needed to set a date to inspect the materials. Mr. Britt again did not respond.

The case then languished until April 22, 2020, when the trial court held a remote status hearing. At this hearing, the trial court noted that Mr. Britt had not taken steps to move the case forward and that it had been on the docket since August 2017. Mr. Usery brought up a continuing need to inspect the concrete materials. The trial court issued an oral ruling requiring Mr. Britt to provide Mr. Usery with dates to inspect the concrete within sixty days. After the hearing, Mr. Usery drafted a proposed order and sent a copy to Mr. Britt via email. The email read, "Please let me know if I have approval to sign for

you.  If I haven't heard by Friday, I will just send it in and you can send in your own if you want."  Mr. Britt did not believe the order accurately represented the trial court's conclusion during the hearing.  When Mr. Britt did not respond to the email, Mr. Usery filed the order with the trial court.  Mr. Britt states that he was not notified that the proposed order was filed.  The trial court then entered an order on June 9, 2020, in which it stated, "Plaintiffs are to give Defendants dates to view the foundation that is the subject matter of the complaint and such viewing shall be completed by June 30, 2020."  Mr. Britt also claims that he was not notified when the order was entered.

Mr. Britt did not provide dates to inspect the concrete as required by the order.  On July 6, 2020, after the June 30 deadline passed, Mr. Usery filed a motion to dismiss based on Mr. Britt's failure to prosecute and, especially, Mr. Britt's failure to comply with the court's order providing a June 30 deadline.  On July 13, Mr. Usery emailed a copy of the motion to dismiss to Mr. Britt.  The subject line read, "Britt v. Usery," and the body of the email stated, "Please find Defendant's second motion to dismiss attached.  It is set for August 11."  As with the June 9 Order, Mr. Britt claims that he did not receive timely notice of Mr. Usery's motion to dismiss or of the hearing set for August 11.  Mr. Britt states that he only discovered the motion to dismiss on August 10 when Mr. Usery copied him on an email to the court clerk to inquire about the upcoming hearing.  After seeing this email, Mr. Britt called Mr. Usery, who informed him that he had emailed a copy of the motion on July 13.  Mr. Usery forwarded the email to Mr. Britt again.  Mr. Britt claims that only two pages of the motion were attached and that it did not include the notice of hearing.  Therefore, Mr. Britt claims to have only seen the full motion the morning of the hearing after the clerk provided a copy to him before the hearing.

There is no transcript of the August 11, 2020 hearing, but the parties agree that the trial court orally ruled it was granting Defendant's motion to dismiss.  Two days later, on August 13, before the trial court entered a written order of dismissal, Mr. Britt filed a Notice of Voluntary Dismissal.  On August 18, the trial court entered its written order granting Mr. Usery's motion to dismiss with prejudice.  Mr. Britt then timely filed a motion to set aside the order of dismissal.  At the hearing on Mr. Britt's motion to set aside, Mr. Britt argued that he had not been properly notified of Mr. Usery's motion to dismiss.  When questioned by the trial court, Mr. Britt admitted that he did receive Mr. Usery's email on July 13, 2020, which included a copy of the motion to dismiss and stated that the hearing was set for August 11.  He argued, however, that the email violated Tennessee Rule of Civil Procedure 5.02(2) because the subject line of the email, which read, "Britt v. Usery," did not provide enough information to inform him that the email contained a filing in the named case.  Therefore, he asserted that he missed it amongst his numerous other emails.  He also argued that Mr. Usery never sent a mailed notice of the email, as required by Rule 5.  The trial court asked Mr. Britt if he had raised these matters during the prior August 11 hearing on the motion to dismiss.  Mr. Britt responded that he "tried to relay that to a certain extent."

- 3 -

In response to Mr. Britt's repeated arguments that Mr. Usery failed to serve the motion to dismiss, the trial court stated,

> Well, that's assuming that I believe what you're telling me. . . . You say it wasn't served. I mean, anybody can get up here and say, "Well, I didn't get it. I didn't get it. I didn't get it served."

The trial court also noted that Mr. Britt had filed his notice of voluntary dismissal only after the court had already orally dismissed the case.

> I had already made a ruling prior to you filing the notice for voluntary dismissal. I had already made a ruling to grant [Mr. Usery's] motion to dismiss for failure to prosecute.

When pressed about the timing of the notice of voluntary dismissal, Mr. Britt admitted that he filed it because he did not like the court's ruling at the hearing:

> THE COURT: And so I made a ruling on August 11th. You didn't like my ruling, so you, then, on August 13th, came down to the courthouse and filed a notice of voluntary dismissal.
>
> [PLAINTIFF'S COUNSEL]: Correct.

The trial court also clarified its reasoning for granting the motion to dismiss. The trial court judge stated that Mr. Britt failed to prosecute the case, that Mr. Britt failed to abide by the court's June 9 order, and that the court has the discretion to dismiss a case with prejudice when a party does not follow court orders. The judge also explained that the parties had failed to show up to six regularly scheduled docket calls between 2017 and 2019 where the case could have been moved forward. Ultimately, the trial court denied Mr. Britt's motion to set aside in a written order entered on January 9, 2021.

Mr. Britt appealed, arguing that the trial court erred by declining to honor his notice of voluntary nonsuit and instead entering a written order dismissing his case with prejudice for failure to prosecute. Mr. Britt contends that the trial court erred because as of August 13, 2020, the date of filing of his notice, he retained the absolute right to voluntarily nonsuit his case under Tennessee Rule of Civil Procedure 41.01(1). Mr. Usery counters that the trial court's oral ruling dismissing Mr. Britt's case with prejudice deprived him of his right to nonsuit his case under Rule 41.01(1).

II.

- 4 -

Tennessee Rule of Civil Procedure 41.01(1) stands at the epicenter of the parties' dispute in this case. Under Rule 41.01, the general rule is that a party has a free and unrestricted right to voluntarily dismiss an action until trial. Rule 41.01 states:

> Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties . . . .

Tenn. R. Civ. P. 41.01(1). Accordingly, the text of the Rule 41.01 creates four exceptions to the expansive right to nonsuit. Rule 23.05 places restrictions on voluntary nonsuits in class action lawsuits, Rule 23.06 does the same for derivative actions by shareholders, and Rule 66 applies when a receiver has been appointed. Additionally, a party does not have a right to take a voluntary nonsuit in cases where the opposing party's motion for summary judgment is pending.[1]

The Tennessee Supreme Court in *Lacy v. Cox* noted three other limitations. 152 S.W.3d 480, 484 (2004). In addition to the express exceptions in Rule 41.01(1), the *Lacy* Court noted that there is

> an implied exception which prohibits nonsuit when it would deprive the plaintiff of some vested right. . . . [Additionally,] [a] plaintiff is further limited to taking no more than two nonsuits without prejudice, Tenn. R. Civ. P. 41.01(2), and nonsuit cannot be taken more than one year after an initial dismissal.

*Id*.

Neither party asserts that any of these exceptions or exclusions apply to the present case; rather, their argumentation singularly focuses on whether the litigation had reached a point in proceedings that caused Mr. Britt to lose his right to a voluntary nonsuit. For jury trial proceedings, "[a]s long as none of these exceptions and limitations serve to restrict dismissal, Rule 41.01(1) affords a plaintiff the free and unrestricted right to voluntary dismissal without prejudice before the jury retires." *Lacy*, 152 S.W.3d at 484. For non-jury trials, "the absolute right to voluntary dismissal without prejudice continues . . . 'until

---

[1] A pending motion for summary judgment removes the ability of a plaintiff to take a voluntary dismissal as a matter of right, but the trial court may still permit in appropriate circumstances a voluntary dismissal while a summary judgment motion is pending. *See*, *e.g.*, *Stewart v. Univ. of Tenn.*, 519 S.W.2d 591, 593 (Tenn. 1974); *Autin v. Goetz*, 524 S.W.3d 617, 631 (Tenn. Ct. App. 2017); *Ewan v. Hardison L. Firm*, 465 S.W.3d 124, 136 (Tenn. Ct. App. 2014).

the matter has been finally submitted to the court for determination on the merits.'" *Id.* at 486 n.14 (quoting *Weedman v. Searcy*, 781 S.W.2d 855, 857 (Tenn. 1989)).

It is this last limitation that is the contested ground between the parties in this case. Mr. Usery argues that this case moved beyond the terminus point for Mr. Britt to freely exercise his right to voluntary nonsuit once the trial court orally granted his motion to dismiss. He insists that the matter was submitted to the trial court for a decision "on the merits" and ruled upon orally. Mr. Britt contends that the basis of the trial court's order did not actually constitute submission of the matter "on the merits" for purposes of nonsuiting a case under Rule 41.01. Both parties agree that whether this motion was granted on the merits is the determinative question in resolving whether Mr. Britt still had a right to voluntarily nonsuit. We address this appeal solely on the basis framed by the parties -- whether under the language of Rule 41.01(1) Mr. Britt still had a right to voluntarily nonsuit his case -- without considering exceptions that the parties have agreed are inapplicable.

III.

To help avoid missing the forest for the trees in considering the issue before us, we begin with a brief exploration of the historical development of Tennessee's handling of voluntary dismissals. Under the earliest common law rule in Tennessee, parties had the right to nonsuit their case even after the jury returned, up until the verdict was actually recorded. *Lacy*, 152 S.W.3d at 487 n.16 (citing *Graves v. Union Ry. Co.*, 177 Tenn. 699, 152 S.W.2d 1026, 1028 (1941)). Within the first decade of Tennessee statehood, however, the legislature superseded the common law rule, bringing the right to nonsuit to a close upon the retirement of the jury. *Id.* (citing Laws of Tenn., ch. 6, § 58 (1801) ("[E]very person desirous of suffering a non-suit on trial at law, shall be barred therefrom, unless he do so before the jury retire from the bar.")); *see also Darby v. Pidgeon Thomas Iron Co.*, 144 Tenn. 298, 232 S.W. 75, 75 (1921) (observing that "[b]efore the passage of the . . . statute a nonsuit could be taken after the verdict and before it was recorded"). The Tennessee legislature subsequently addressed the handling of counterclaims and nonsuits in bench trials. With regard to bench trials, the 1858 Code of Tennessee provided that "[i]f the trial is by the court instead of the jury, the non-suit or dismissal . . . shall be made before the cause is finally submitted to the court, and not afterwards." Code of Tennessee § 2966 (Return J. Meigs & William F. Cooper, eds., E.G. Eastman & Co. 1858). Throughout the 1800s until the 1970s, nonsuits in Tennessee were governed by statutes that remained largely unchanged. *Staggs v. Vaughn*, 325 S.W.2d 277, 278 (Tenn. 1959) (observing that "[t]he right to take a non-suit is regulated by Statute").[2]

---

[2] The 1955 version of the Tennessee Code Annotated provided with regard to nonsuits the following:

The central statutory provisions governing nonsuits were superseded, however, with the adoption of Rule 41.01 of the Tennessee Rules of Civil Procedure and the repeal of corresponding statutory provisions.[3] In adopting the language of Rule 41 in 1970, the Advisory Commission in embracing an expansive right to nonsuit, observed the following:

> Prior practice in the circuit court permitted a claimant an unrestricted right to take a voluntary nonsuit in jury cases at any time before final retirement of the jury, and in nonjury cases until final submission of the case to the court for decision. . . . In chancery court, the right to voluntary dismissal without prejudice was more limited; generally permission of the court was required after proof on the merits was taken. . . . The Committee felt that the more liberal circuit court practice would probably be preferable to the Bar . . . .

Tenn. R. Civ. P. 41 Advisory Comm'n Cmt. Characterizing Tennessee's approach to nonsuits, the Tennessee Supreme Court has observed that Tennessee's "rule on voluntary dismissals . . . is much more liberal than that . . . in federal courts and in many other jurisdictions" and that "the more liberal practice was preserved in the [Tennessee] Rules of Civil Procedure, although modified in some respects." *Weedman*, 781 S.W.2d at 856-57.

Historically, in Tennessee the right to nonsuit existed until limitations emerged in connection with an actual trial proceeding, whether before a jury or judge. A pre-trial limitation on the right to voluntary dismissal emerged, however, in Tennessee Rule of Civil Procedure 41.01(1) through the adoption of a similar limitation to Federal Rule of Civil

---

20–1311. Nonsuit before retirement of jury.—The plaintiff may, at any time before the jury retires, take a nonsuit or dismiss his action as to any one or more defendants, but if the defendant has plead a setoff or counterclaim, the latter may elect to proceed on such counterclaim in the capacity of a plaintiff.

20–1312. Withdrawal of counterclaim.—The defendant may, in like manner, withdraw his counterclaim at any time before the jury retires to consider of their verdict.

20–1313. Dismissal in nonjury trials.—If the trial is by the court instead of the jury, the nonsuit or dismissal provided for in §§ 20–1311 and 20–1312 shall be made before the cause is finally submitted to the court, and not afterwards.

[3] The Tennessee Supreme Court adopted the Tennessee Rules of Civil Procedure by order on January 26, 1970 and provided for them to take effect on January 1, 1971. *In re Estate of Boote*, 198 S.W.3d 699, 712 n.21 (Tenn. Ct. App. 2005). The Tennessee General Assembly repealed multiple statutory provisions in accordance with the adoption of the Rules of Civil Procedure including the nonsuit provisions. 1972 Tenn. Pub. Acts Ch. 565 §1(11).

Procedure 41(a)(1)(A)(i)[4] as it relates to summary judgment motions. This restriction removes the right of a party to nonsuit during a pending summary judgment motion from an adverse party. Tenn. R. Civ. P. 41.01(1). Nevertheless, "[e]ven when a summary judgment motion is pending," a Tennessee "court may grant a voluntary nonsuit without prejudice but to do so is discretionary with the court and plaintiff cannot move for dismissal as a matter of right." Nancy Fraas MacLean &, Matthew Jeffrey MacLean, 6 Tenn. Prac., Civil Procedure Forms § 41:2 (2022). Federal Rule of Civil Procedure 41(a)(1)(A)(i) actually imposes a limitation on voluntary dismissals as soon as "the opposing party serves either an answer or a motion for summary judgment." Tennessee's Rule 41.01 has no comparable limitation involving the restriction of voluntary nonsuits in connection with service of an answer. Though Tennessee's Rule 41.01 does limit the ability to nonsuit when a motion for summary judgment from an adverse party is pending, the Rule makes no express reference to a limitation on an ability to nonsuit based upon a motion to dismiss. In other words, in the text of Rule 41.01 the only pre-trial motion restricting the right to voluntary nonsuit is a motion for summary judgment.

In the 1998 case of *Hamilton v. Cook*, this court was presented with a question of whether under Rule 41.01 the plaintiffs retained their right to nonsuit after the court orally announced its decision dismissing the case in response to a motion to dismiss but before entering its written order. No. 02A01-9712-CV-00324, 1998 WL 704528, at *4 (Tenn. Ct. App. Oct. 12, 1998). In an unpublished opinion, this court concluded that "[o]nce the case finally has been submitted to the trial court for a determination on the merits, . . . the plaintiff no longer can take a voluntary dismissal as a matter of right." *Id*. The *Hamilton* Court observed that the defendants' motion to dismiss "already had been submitted to the trial court for a determination on the merits and, in fact, the trial court had ruled on the Defendants' motion by announcing that it was dismissing the [Plaintiffs'] complaint." *Id*. Under these circumstances, the court concluded that the plaintiffs "lost the ability to take a voluntary dismissal as a matter of right." *Id*. Regarding the motion to dismiss, the court noted it contained valid defenses to the plaintiffs' claims. *Id*. at *5. The motion to dismiss asserted, "*inter alia*, that the [plaintiffs'] complaint failed to state a claim upon which relief could be granted, that the trial court lacked subject matter jurisdiction over the [plaintiffs'] claims for declaratory and injunctive relief because the [the plaintiffs] had not exhausted all available administrative remedies, that the [plaintiffs'] claims against the Defendants were barred by the doctrine of sovereign immunity, and that the [plaintiffs'] claim for damages against the individual Defendants was barred by the doctrine of qualified immunity." *Id*. at *2 (footnotes omitted). While conceding that the matter involved a non-jury proceeding, the court reasoned that the circumstance was, nevertheless, "somewhat analogous to the situation in a jury proceeding where the plaintiff attempts to take a voluntary nonsuit after the trial court orally has granted the defendant's motion for a

---

[4] Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves . . . a motion for summary judgment . . . ."

directed verdict." *Id.* at \*5. The court noted that "[s]uch a practice is forbidden by both the rule and our case law." *Id.* Ultimately, the *Hamilton* Court applied the same concept to oral rulings on motions to dismiss that were upon the merits, concluding the plaintiff had lost the right to nonsuit the case and would need court permission to do so. *Id.*

This would not be the last occasion that this court confronted the intersection of the right to voluntary nonsuit with a motion to dismiss. In a 2021 unpublished decision in *Irvin v. Green Wise Homes, LLC*, this court was confronted with a strikingly similar circumstance to that in *Hamilton*. No. M2019-02232-COA-R3-CV, 2021 WL 709782 (Tenn. Ct. App. Feb. 24, 2021), *perm. app. denied* (Tenn. June 9, 2021). As in *Hamilton*, the trial court declined to permit claimants to voluntarily nonsuit their case without prejudice when the claimants sought to do so after an adverse oral ruling granting a motion to dismiss. *Id.* at \*2. Again, as in *Hamilton*, the motion to dismiss was upon the merits, having asserted a failure to state a claim under Tennessee Rule of Civil Procedure 12.02(6). *Id.* Ultimately, citing the *Hamilton* decision, the *Irvin* Court concluded that the claimant "lost the ability to take a nonsuit as a matter of right after the trial court orally granted Appellee's motion to dismiss [its] claims. At that point, [the claimant's] case had been decided on the merits." *Id.* at \*9 (footnote omitted).

This court has also arrived at the intersection between voluntary nonsuits and motions to dismiss in multiple cases addressing whether the filing of a motion to dismiss by an adverse party in-and-of-itself forecloses the right to voluntarily nonsuit. The consistent holding of this court has been that the filing of a motion to dismiss does not in-and-of-itself remove the right to a voluntary nonsuit. *Westfield Grp. Ins. v. Embry*, No. M2022-01301-COA-R3-CV, 2023 WL 6314469, at \*4 (Tenn. Ct. App. Sept. 28, 2023), *no perm. app. filed* ("[T]he motion to dismiss was filed, but [the plaintiff] had not responded to the merits of the motion, the parties had not presented argument before the trial court, and the trial court had not provided its disposition of the motion through an oral ruling. [The defendant] simply filed a motion to dismiss that had not been heard and, importantly, the trial court had not yet opined on the merits of the motion."); *Hurley v. Pickens*, 536 S.W.3d 419, 420 (Tenn. Ct. App. 2016) ("We find and hold that Plaintiff had the right to take a voluntary dismissal even while a motion to dismiss was pending."); *Club Leconte v. Swann*, 270 S.W.3d 545, 550 (Tenn. Ct. App. 2008) ("[T]he Trial Court had not yet ruled on the motion to dismiss[;] . . . plaintiff's motion for voluntary dismissal should have been granted.").

Finally, this court has addressed the intersection between motions to dismiss and nonsuits in a case raising the question of whether the trial court retains subject matter jurisdiction after the filing of a notice of voluntary nonsuit following an oral ruling on a motion to dismiss. This court rejected the contention that "the moment the plaintiff gives effective notice of a Tennessee Rules of Civil Procedure, Rule 41.01 voluntary dismissal (nonsuit) . . . the trial court lose[s] all subject matter jurisdiction to adjudicate any issue affecting the nonsuiting plaintiff, save only the entry of a pro forma order confirming the

already-effective voluntary dismissal (nonsuit)." *Mack v. Cable Equip. Servs., Inc.*, No. W2020-00862-COA-R3-CV, 2022 WL 391458, at *7 (Tenn. Ct. App. Feb. 9, 2022), *perm. app. denied* (Tenn. Aug. 3, 2022). In reaching this conclusion, this court cautioned that the plaintiffs did not seek review "of the merits of the trial court's rulings that they were no longer entitled to take a nonsuit as of right, that the court had discretion regarding whether to permit a nonsuit, and that allowing a nonsuit after the trial court had issued an oral ruling on the motion to dismiss would be unfairly prejudicial, in accordance with the reasoning of *Hamilton*. As such, we do not reach those issues." *Id.*

IV.

Turning to the circumstances of the present case, we conclude that an oral ruling on a motion to dismiss for failure to prosecute does not eliminate a right to voluntarily nonsuit a case. We reach this conclusion for four central reasons. One, the text of Rule 41.01(1) does not support the conclusion that Mr. Britt lost his right to voluntarily nonsuit his case. Two, until the trial court entered its written order, there was still a pending case to be nonsuited. Three, in extending the limitations on voluntary nonsuit under Rule 41.01(1) to motions to dismiss, the *Hamilton* and *Irvin* courts emphasized that the dismissals had been upon the merits of the case. Four, the Tennessee Supreme Court and United States Supreme Court have observed that "on the merits" in connection with failure to prosecute does not truly mean a determination on the merits in the conventional sense of the term.

When interpreting a rule, it is a prudent to turn first to the text of the rule. Rule 41.01(1) states that "the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties . . . ." The pre-trial motion to dismiss based upon failure to prosecute and the notice of voluntary dismissal were presented at a "time before the trial." In fact, there was no trial in this case. Accordingly, under the plain language of the rule, there is no limitation in Rule 41.01(1) that would have eliminated Mr. Britt's right to voluntarily nonsuit his case.

Continuing with the text of Rule 41.01(1), we note that the Rule does specifically impose limitations upon voluntarily nonsuits with regard to another pre-trial motion -- a motion for summary judgment -- while referencing no limitations arising from motions to dismiss. Addressing pre-trial motions, Rule 41.01(a) specifically limits the ability to nonsuit a case during the pendency of a summary judgment motion, providing that the right to voluntary nonsuit applies "except when a motion for summary judgment made by an adverse party is pending." There is no corresponding reference, exclusion, or carve-out, in other words no similar limitation, in the language of Rule 41.01(1) related to motions to dismiss.

As for the second basis of our decision, there is still a pending suit for a party to nonsuit where there is an oral pronouncement granting a motion to dismiss by a trial court

but where the written order to that effect has not yet been entered. When a trial court orally dismisses a case, the dismissal does not become final until the court enters a written order. "It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts . . . ." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting *Anil Const., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001) ("[T]he court speaks through its order, not through the transcript."). One reason for this is that a trial court may modify or even reverse its oral decision before entering the written order:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his [or her] judgment that he [or she] may deem proper, until it is entered on the minutes, and he [or she] may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Broadway Motor Co. v. Pub. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (1930) (citing *Gibson's Suits in Chancery,* § 572). Simply stated, in connection with judgments, "no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Lewis v. Brooks*, 66 S.W.3d 883, 886 (Tenn. Ct. App. 2001) (quoting *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 536 (Tenn. Ct. App. 2000)).

As to the third basis of our decision, this court in *Hamilton*, seemingly, extended nonsuit limitations to motions to dismiss by viewing dismissals on a substantive basis as akin to a final substantive merits decision after a trial of a case. Dismissal based on failure to prosecute, however, cannot be similarly understood. In reaching its conclusion, the *Hamilton* Court cited three cases, all of which involved actual trials and in none of which the proceedings reached a point where the party lost the right to voluntarily nonsuit: (1) *Weedman v. Searcy*, 781 S.W.2d 855 (Tenn. 1989), (2) *Harris v. Harris*, No. 01-A-01-9511-CV00518, 1996 WL 225702 (Tenn. Ct. App. May 3, 1996), and (3) *Willbanks v. Trousdale County Board of Education*, 1986 WL 1663 (Tenn. Ct. App. Feb. 7, 1986).

In *Weedman v. Searcy*, the Tennessee Supreme Court observed the following:

> In a non-jury case, until the case has finally been submitted to the trial court for a decision, the plaintiff has a right to a voluntary dismissal. The right does not continue in a jury case after the jury retires. In the non-jury case, until the matter has been finally submitted to the trial judge for decision, the "trial" of the case has not been concluded. The trial judge may order further proof to be taken, may reopen the proof for various purposes, extend the time

for filing briefs, and the like. Dismissal as a matter of right continues to be available at least until written post-trial briefs have been filed pursuant to order of the trial judge and until the matter has been finally submitted to the court for determination on the merits. That point had not been reached in the present case when the motion of appellee was made.

*Weedman*, 781 S.W.2d at 857. The *Harris* Court rejected the contention that a directed verdict motion[5] during a trial proceeding foreclosed a right to voluntary non-suit, concluding that "[i]n a non-jury case, the plaintiff has the right of voluntary dismissal until the case is finally submitted to the Court for consideration." *Harris*, 1996 WL 225702, at *5. In *Willbanks v. Trousdale County Board of Education*, this court concluded that the right to voluntary dismissal had not been foreclosed despite the evidentiary portion of the trial proceedings having ended. The *Willbanks* Court stated:

> We hold that the phrase "during the trial of the cause" of Rule 41.01 covers any proceeding until the case is finally submitted to the trial court for decision. . . .
>
> Here, the case had not been finally submitted. The trial court gave the parties additional time in which to file briefs and to return to court for oral argument. If the trial court considered that the case had been finally submitted for decision and that the case "was closed," then the court was asking the parties to engage in an exercise in futility. The record is clear that the court had not taken the case under advisement for the purpose of rendering a decision but, in fact, would not render a decision until such time as briefs had been filed and such oral argument as the parties wished to make had both been considered by the court. The trial in this case did not end with submission of all of the proof.

*Willbanks*, 1986 WL 1663, at *3.

In endeavoring to understand the *Hamilton* Court's application of Rule 41.01(1) to oral rulings upon motions to dismiss, it appears that the *Hamilton* Court viewed a motion to dismiss submitted and ruled upon based on the merits as a form of trying of the case on the merits in which the case is found to be substantively without merit. The *Irvin* Court similarly emphasized that dismissal had been sought and granted upon the merits. Failure to prosecute a case cannot be thought of as analogous with trying a case upon the merits. To the contrary, failure to prosecute is a failure to try a case, a failure to advance one's cause of action.

---

[5] The *Harris* Court did note that "[a] motion for directed verdict has no place in a non-jury proceeding . . . ." 1996 WL 225702, at *5.

In support of his contention that this case is akin to *Hamilton*, Mr. Usery argues that the language of Tennessee Rule of Civil Procedure 41.02(3) is determinative as to whether Mr. Britt retained a right to voluntarily nonsuit his case. Rule 41.02(3) provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits." Accordingly, under Rule 41.02(3) a dismissal for failure to prosecute "operates as an adjudication on the merits." Based on this language of Rule 41.02(3), Mr. Usery contends that a motion to dismiss for failure to prosecute constitutes a submission of the case "on the merits" to the trial court, thereby foreclosing a plaintiff's right to nonsuit his or her case.

Mr. Usery's argument dovetails into the fourth basis of our decision: that, while not specifically addressing nonsuits, the Tennessee Supreme Court and United States Supreme Court have both considered "on the merits" language in connection with failure to prosecute and concluded that it does not refer to the conventional understanding of a decision having been reached on the substance of the matter. The Tennessee Supreme Court, specifically, has circumscribed the reach of the 41.02(3) language, upon which Mr. Usery grounds his argument, that dismissal for failure to prosecute "operates as an adjudication on the merits." In *Henry v. Goins*, 104 S.W.3d 475 (Tenn. 2003), the Tennessee Supreme Court determined the appropriate standard to be applied when a trial court considers and an appellate court reviews a ruling upon a Tennessee Rule of Civil Procedure 60.02 motion for relief in light of a dismissal for failure to prosecute. Though the *Henry* Court acknowledged that Tennessee Rule of Civil Procedure 41.02(3) states "that an involuntary dismissal for failure to prosecute 'operates as an adjudication upon the merits' unless the trial court otherwise directs," the Tennessee Supreme Court, nevertheless, concluded that a dismissal for failure to prosecute was a not determination on the merits for purposes of considering a Rule 60.02 motion. *Id.* at 478 (quoting Tenn. R. Civ. P. 41.02(3)). The *Henry* Court reasoned that instead "[a] dismissal for failure to prosecute is analogous to a default judgment. When a defendant fails to answer a complaint, the plaintiff may obtain a default judgment without a hearing on the merits. When a plaintiff fails to prosecute the case, the defendant may receive a judgment of dismissal without a hearing on the merits." *Id*. at 481. The court added that "[d]ismissals based on procedural grounds like failure to prosecute and default judgments run counter to the judicial system's general objective of disposing of cases on the merits." *Id*. The Court ultimately applied a standard more favorable to affording relief under 60.02 than would exist if the case had actually been decided on the merits. *Id*.

Addressing the "on the merits" language in the context of res judicata determination, the Tennessee Supreme Court interpreted the "operates as an adjudication on the merits" as akin to a with prejudice determination. In *Regions Bank v. Prager*, the Tennessee Supreme Court assessed whether a trial court's dismissal for failure to prosecute "otherwise specified" that it was not on the merits for purposes of res judicata. 625 S.W.3d 842 (Tenn.

- 13 -

2021). In *Prager*, the trial court dismissed a case for failure to prosecute and orally specified that the dismissal *would not* bar the plaintiff from refiling the case. *Id.* at 845. The Court noted that the language of Rule 41.02(3) "certainly is clear that such a dismissal operates as an adjudication on the merits." *Id.* at 850. But, due to the trial court's ruling that the dismissal would not bar a refiling of the suit, the Tennessee Supreme Court held that the order otherwise specified that it was not on the merits under Rule 41.02(3). *Id.* at 852. Therefore, because the original dismissal was not on the merits, res judicata did not bar the subsequent refiling. *Id.* Similar to *Henry*, the analysis interpreted the "on the merits" language of Rule 41.02(3) to mean something akin to "with prejudice," rather than going to the underlying substantive merits. *Id.*; *see also Patrick v. Dickson*, 526 S.W.2d 449, 453 (Tenn. 1975) (holding that a dismissal for failure to prosecute was not "on the merits" and that the phrase "with prejudice" was a nullity).

The federal courts have similarly noted that "on the merits" has two distinct meanings and purposes. One usage of "on the merits," the more prototypical one, refers to resolution of a case upon its substantive merits, rather than a procedural basis, while the other usage of "on the merits" is more limited in scope serving as an indication that an adverse judgment is entered with, rather than without, prejudice. The United States Supreme Court has interpreted the "adjudication upon the merits" language found within Federal Rule of Civil Procedure 41(b) as using the language in the narrower sense, that it simply means "with prejudice." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001). Explaining the meaning of "adjudication upon the merits" in the context of Rule 41(b), the Supreme Court stated, that an adjudication upon the merits, as used in Rule 41(b) "is the opposite of a dismissal without prejudice—that is, it is a dismissal that prevents refiling of the claim in the same court." *Id.* at 505 (quoting 18 Wright & Miller § 4435, at 329, n. 4 for the proposition that "[b]oth parts of Rule 41 . . . use the phrase 'without prejudice' as a contrast to adjudication on the merits," and 9 Wright & Miller, § 2373, at 396, n. 4 for the proposition that "'[W]ith prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits'"). Exploring the two different meanings, Justice Scalia writing for the Supreme Court in *Semtek International Incorporated* drew a divide between the "with prejudice" understanding and what he described as "[t]he original connotation of an 'on the merits' adjudication," which "is one that actually 'pass[es] directly on the substance of [a particular] claim' before the court." 531 U.S. at 501-02 (quoting Restatement (Second) of Judgments § 19, Comment a, p. 161 (1980)). Justice Scalia observed that the latter "connotation remains common to every jurisdiction of which we are aware." *Id.* at 502; *see also Krekelberg v. City of Minneapolis*, 991 F.3d 949, 954-55 (8th Cir. 2021) (stating that "the Supreme Court explained in *Semtek* . . . that the phrase 'adjudication on the merits' in Rule 41(b) means 'with prejudice' and should not be equated with a 'prototypical judgment on the merits'—'one in which the merits of a party's claim are in fact adjudicated for or against the party after trial of the substantive issues.'"). In sum, on the merits has two distinct meanings. One is related to a determination turning upon the substance of a claim, and the other is a means of communicating that a determination is with prejudice. The former, a decision turning upon an assessment of the

- 14 -

substance of a claim, is the more prototypical usage. The dismissal in this case was not a decision based upon the substantive merits of the case but instead a procedural dismissal based upon a failure to prosecute; accordingly, it was not "on the merits" in the prototypical use of the term.

Neither motions to dismiss nor the "on the merits" language of *Hamilton* appear anywhere in Rule 41.01(1), which liberally allows for nonsuits in Tennessee until trial. The intersection between Rule 41.01(1) and the *Hamilton* decision is sufficiently complicated that a visual analogy may prove useful. We can think of the textual limitations upon a right to voluntary nonsuit in Rule 41.01(1) as creating a house. In this analogy, this court's *Hamilton* decision can be understood as having built an awning extending the limitations on the right to voluntary nonsuit beyond the walls of the house to cover oral grants of motions to dismiss on the merits. The *Hamilton* Court's "on the merits" language in connection with a motion to dismiss is, however, the awning attached to the house, not the Rule 41.01(1) house itself. In constructing this awning, the *Hamilton* Court seemingly treated a motion to dismiss that raised substantive bases for dismissal of a suit as akin to a substantive determination based upon the merits of the claim after a trial. *See Semtek Int'l Inc.*, 531 U.S. at 501 (quoting Restatement (Second) of Judgments § 19, Comment a, p. 161 (1980)). A dismissal based upon a failure to prosecute, however, is not a determination that the party's claim is without merit. Dismissal based upon failure to prosecute is not akin to trying and rejecting a claim based on a lack of substantive merits; rather; it is a failure to advance, to try the case. This distinction runs through cases like *Henry v. Goins* and *Regions Bank v. Prager* and was also recognized in *Semtek International Incorporation v. Lockheed Martin Corporation*. If this court were to extend *Hamilton* to the present case, we would be building a shaky unsupported addition that was attached to the *Hamilton* awning, not the Rule 41.01(1) house.

We are mindful that a contrary decision in this case may result in better policy outcomes. The text, however, of Rule 41.01(1) does not support a limitation upon a right to voluntarily nonsuit under the circumstances of the present case. Nor do we understand prior judicial precedents as having placed an interpretive gloss on Rule 41.01(1) that would result in loss of the right of voluntarily nonsuit under the circumstances of the present case. To the contrary, our understanding of prior cases is that a distinction exists between merits determinations based on substance and procedural dismissals such as a failure to prosecute.

Accordingly, while such policy considerations present a siren's song, like Odysseus, we remain tied to the mast[6] — or in this case the text of Rule 41.01(1).[7]

Accordingly, under the text of Rule 41.01(1) the Plaintiff maintained the right to voluntarily dismiss the case when he filed the notice of voluntary dismissal on August 13, 2020. We reverse the trial court's order dismissing the case with prejudice. Because we find that Plaintiff's notice of voluntary dismissal was effective, we need not reach the remaining issues on appeal.

## IV.

For the reasons discussed above, we reverse the judgment of the Circuit Court for Henderson County. Costs of the appeal are taxed to the appellees, Richard Jason Usery and Jason Usery Construction, LLC., for which execution may issue if necessary.



JEFFREY USMAN, JUDGE

---

[6]

> The story of Odysseus and the Sirens is a useful (if mythical) example of . . . a binding pre-commitment. The Sirens were creatures with magically captivating voices that used their singing to lure sailors toward them and onto hidden rocks that would sink their ships and drown them all. The course which Odysseus and his band needed to sail would take them within the Siren' range. Following the advice of Circe, Odysseus had his crew put wax in their ears to make them deaf to the singing. Wishing to hear the beautiful music himself, Odysseus did not use the wax, but had himself tied securely to the mast of the ship. He extracted a promise from all his crewmembers not to untie him, no matter how hard he begged or pleaded . . . . [H]e was creating a rule to protect himself from the mistakes of his will in the heat of the moment. And of course, once the song was in his ears, Odysseus begged his crew to set him free-which would have led to their destruction. His crew tied him only tighter. He was protected from himself and they from him.

Jennifer A. Drobac & Oliver R. Goodenough, *Exposing the Myth of Consent*, 12 Ind. Health L. Rev. 471, 501 (2015).

[7] Those policy concerns may suggest that how motions of dismiss, of various types, and rulings thereupon should impact voluntary dismissals would be worthy of consideration by Advisory Commission on the Rules of Practice & Procedure.